## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DOUGLAS SIMPSON,** *on behalf of himself and others similarly situated*, | **CIVIL ACTION** |
| Plaintiff, | **NO. 22-2911-KSM** |
| *v.* | |
| **THE J.G. WENTWORTH COMPANY**, | |
| Defendant. | |

### MEMORANDUM

**MARSTON, J.**                                                                        **January 19, 2023**

Plaintiff Douglas Simpson brings this putative class action against Defendant The J.G. Wentworth Company under the Telephone Consumer Protection Act ("TCPA") and the Florida Telephone Solicitations Act ("FTSA").  (Doc. No. 1.)  Plaintiff now moves to transfer the case to the United States District Court for the Middle District of Florida, citing Defendant's recent discovery responses, which identified the Florida-based vendor that placed the call at issue on Defendant's behalf.  (Doc. No. 19 at 4.)  Defendant opposes the motion.  (Doc. No. 21.)  For the reasons discussed below, Plaintiff's motion is granted, and this matter is transferred to the Middle District of Florida.

## I.      BACKGROUND

Plaintiff claims that on July 13, 2022, he received a pre-recorded telemarketing call on his cell phone.  (Doc. No. 1 at ¶¶ 22, 26.)  That call was eventually transferred to an employee for Defendant, who asked about Plaintiff's financial condition and whether he wished to borrow money.  (*Id.* at ¶¶ 22–36.)  Plaintiff, who lives in Florida, argues that this call violated the TCPA and FTSA, which prohibit individuals and companies from making telemarketing calls using

automated systems or prerecorded messages without first receiving the recipient's prior express written consent.  *See* 47 U.S.C. § 227(b)(1); Fla. Stat. § 501.059(8)(a).

Plaintiff filed his putative, class action Complaint in this Court on July 25, 2022.  (Doc. No. 1.)  On August 9, 2022, Defendant filed its Answer and denied making the call at issue, alleging that "Plaintiff reached out to a third-party regarding interest in its services and, given Plaintiff's request to that third-party, Plaintiff was ultimately routed to [Defendant]."  (Doc. No. 10 at ¶¶ 4, 21, 31. )  Defendant did not identify the alleged third party.  Likewise, in the parties' Joint Rule 26(f) Report, Defendant again states that it "did not make the calls at issue," and that it "works with multiple vendors, who direct leads to multiple entities," including Defendant. (Joint 26(f) Report at 2.)  "Moreover, these vendors themselves work with multiple sub-vendors who generate leads."  (*Id.*)  Again, Defendant did not identify the third-party vendor.

The Court held a preliminary pretrial conference with counsel for the parties on October 6, 2022 and issued a scheduling order a few days later.  (*See* Doc. No. 15.)  That Order set a deadline of February 1, 2023 for the parties to amend the pleadings and add parties; a deadline of March 1, 2023 for Plaintiff to move for class certification; and a discovery deadline of June 2, 2023.  (*See id.* at ¶¶ 2–7.)  In November 2022, the Court approved the parties' protective order and confidentiality agreement for discovery materials, but otherwise, the Court has given little oversight this case.

On December 6, 2022, Plaintiff filed a motion to transfer the action to the United States District Court for the Middle District of Florida, citing Defendant's recent discovery responses, which showed that "the calls at issue were placed by . . . a vendor named Digital Media Solutions, LLC ('DMS') or a subvendor of DMS."  (Doc. No. 19 at 4.)  According to Plaintiff, "DMS has its principal place of business in the Middle District of Florida," which is also where

Plaintiff resides.  (*Id.*)  He argues that transfer is thus appropriate under 28 U.S.C. § 1404(a).

Defendant opposes the motion, arguing that Plaintiff could have initially filed the case in Florida

but chose to litigate in this Court and nothing has changed since he made that decision that

warrants transfer now.  (Doc. No. 21.)

## II.    DISCUSSION

In federal court, venue transfers are governed by 28 U.S.C. §§ 1404(a) and 1406(a).

*Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 878 (3d Cir. 1995).  Section 1404(a) governs

transfer when "both the original and the requested venue are proper."[1]  *Id.*  That Section states

that a district court may, for the convenience of the parties and witnesses and if it is in the

interest of justice, "transfer any civil action to any other district or division where it may have

been brought or to any district or division to which all parties have consented."  28 U.S.C.

§ 1404(a).  Accordingly, a district court must conduct a two-step inquiry in considering a motion

governed by Section 1404(a).  *See Vt. Juvenile Furniture Mfg., Inc. v. Factory Direct Wholesale,*

*Inc.*, 317 F.R.D. 16, 20 (E.D. Pa. 2016).  It must first determine whether venue is proper in the

transferee district and, if so, it must then determine whether transfer would be in the interests of

justice.

"In addressing a motion to transfer, all well-pleaded allegations in the complaint are

generally taken as true unless contradicted by the defendant's affidavits, and the Court may

examine facts outside the complaint to determine proper venue."  *Cigna Corp. v. Celgene Corp.*,

---

[1] Venue is proper in this District, the transferor district, because Defendant is a corporation with its principal place of business in this District.  (Doc. No. 1 at ¶ 7 (alleging as much); Doc. No. 10 at ¶ 7 (admitting allegation).)  *See Daimler AG v. Bauman*, 571 U.S. 117, 118–19 (2014) ("The paradigm all-purpose forums for general jurisdiction are a corporation's place of incorporation and principal place of business."); *see also O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007) (explaining that Pennsylvania's longarm statute authorizes courts to assert personal jurisdiction to the fullest extent allowed under the United States Constitution).

CIVIL ACTION NO. 21-90-KSM, 2021 WL 2072210, at *2 (E.D. Pa. May 24, 2021) (internal quotations omitted).  The party seeking transfer "bears the burden of persuasion."  *In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 57 (3d Cir. 2018).

> ### A.   Venue is Proper in the Middle District of Florida.

The Court must first determine whether this action could have been brought in the Middle District of Florida.  *See* 28 U.S.C. § 1404(a) (permitting transfer of an action to any district "where it might have been brought").  The general venue statue, 28 U.S.C. § 1391, governs this analysis.  As relevant here, that Section provides:

> A civil action may be brought in (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated . . . .

28 U.S.C. § 1391(b).

Here, a "substantial part of the events or omissions giving rise to the claim occurred" in the Middle District of Florida because that is where Plaintiff resides and where he received the allegedly unlawful telephone call.  *See Fitzhenry v. Guardian Protection Servs., Inc.*, CIVIL ACTION NO. 16-1253, 2016 WL 6652760, at *1 (W.D. Pa. Nov. 9, 2016) ("District courts find proper venue where the alleged injury occurred which, in a TCPA action, is where the telephone call was received.").  In the alternative, venue is proper in that district under § 1391(b)(1) because Defendant would be subject to personal jurisdiction there.  *See* 28 U.S.C. § 1391(c)(2) (explaining that a corporation is "deemed to reside, if a defendant, in any judicial district in which such a defendant is subject to the court's personal jurisdiction with respect to the civil action in question").

The Complaint alleges that Defendant placed or directed[2] the allegedly unlawful telemarketing call—a "tortious act" under Florida's longarm statute.  *See* Fla. Stat. § 48.193(1)(a)(3) (extending specific jurisdiction over a nonresident that "commits a tortious act within" the State of Florida); *see also Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F. 3d 1339, 1353–54 (11th Cir. 2013) (explaining that "a nonresident defendant commits 'a tortious act within Florida' when he commits an act *outside* the state that causes *injury within Florida*" (alterations adopted)); *Keim v. ADF MidAtlantic, LLC*, 199 F. Supp. 3d 1362, 1367 (S.D. Fla. 2016) ("Thus, Florida's long-arm statute is satisfied as to a TCPA claim that arises from a non-resident defendant making a telephonic communication into Florida.").  This act also creates sufficient "minimum contacts with [the Middle District of Florida], such that the maintenance of the suit" in that District would "not offend 'traditional notions of fair play and substantial justice.'"  *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Compensation & Placement*, 326 U.S. 310, 316 (1945) (citation omitted).

Notably, Plaintiff alleges that Defendant "expressly aimed" its tortious conduct at the Middle District of Florida when it made the unlawful telephone call to Plaintiff's cell phone in that District.  (Doc. No. 1 at ¶¶ 6, 23, 26 (alleging that Defendant placed the unwanted telemarketing calls to Plaintiff's residential cell phone, while Plaintiff was in Florida).)  Plaintiff

---

[2] As noted above, the Court accepts the allegations in the Complaint as true for purposes of this analysis, and therefore, we assume that Defendant made the allegedly unlawful calls at issue.  However, even if the Court were to consider Defendant's argument (and Plaintiff's apparent concession) that DMV, and not Defendant, called Plaintiff's cell phone in July 2022, Defendant would still be subject to personal jurisdiction in Florida under the longarm statute because Plaintiff maintains that DMV made the relevant call on behalf of Defendant.  *See Keim*, 199 F. Supp. 3d at 1368 ("Contrary to Moving Defendants' argument, the text messages do 'implicate' them because the text messages were allegedly sent on their behalf.  As the Court explained in its prior order, the TCPA incorporates general common law principles of agency and vicarious liability . . . .  Because Keim alleged that Songwhale and Cellit acted as the Moving Defendants' agents when they sent the text messages at issue, those text messages are attributed to the Moving Defendants as their own acts for the purposes of determining personal jurisdiction."); *see also* Fla. Stat. § 48.193(1)(a) (extending jurisdiction under the long arm statute to persons, "who personally *or through an agent* do[ ] any of the acts enumerated in this subsection" (emphasis added)).

felt the brunt of the harm in that District.  (*See id.* at ¶ 6.)  And the exercise of jurisdiction over Defendant in Florida comports with traditional notions of fair play and substantial justice because although Defendant claims it will be burdened if required to litigate in Florida, the State of Florida has "an interest in adjudicating a dispute regarding an intentional tort harming one of its own residents," and Plaintiff has an interest in obtaining "convenient and effective relief" in his home district.  *Keim*, 199 F. Supp. 3d at 1370–71 (finding the effects test discussed in *Calder v. Jones*, 465 U.S. 783 (1984) applied to TCPA claim asserted by Florida resident against nonresident defendant and concluding that exercise of jurisdiction comported with traditional notions of fair play and substantial justice); *see also Ott v. Mortgage Investors Corp. of Ohio, Inc.*, 65 F. Supp. 3d 1046, 1058–59 (D. Or. 2014) (finding specific jurisdiction properly asserted in Oregon over nonresident defendants in TCPA case); *Luna v. Shac, LLC*, No. C14–00607 HRL, 2014 WL 3421514, at *4 (N.D. Cal. July 14, 2014) (finding *Calder* effects test satisfied and specific jurisdiction properly asserted over nonresident defendant in TCPA case); *Hudak v. Berkley Grp., Inc.*, No. 3:13–cv–00089–WWE, 2014 WL 354676, at *3 (D. Conn. Jan. 23, 2014) ("As the facts in plaintiff's complaint support the conclusion that defendants were responsible for the phone calls at issue in this case, and the phone calls were directed to Connecticut, defendants have sufficient minimum contacts with this forum to give rise to specific jurisdiction in the context of this lawsuit.  Moreover, subjecting defendants to this Court's jurisdiction does not offend traditional notions of fair play and substantial justice." (citation omitted)); *Branham v. ISI Alarms, Inc.*, No. 12–CV–1012 (ARR)(MDG), 2013 WL 4710588, at *2 (E.D.N.Y. Aug. 30, 2013) ("[T]he court finds that exercising jurisdiction over Waller," a non-resident defendant in this TCPA action, "is permitted by New York's long-arm statute and comports with due process.").

Accordingly, the Middle District of Florida is a proper venue and could exercise personal jurisdiction over Defendant.  That court would also have subject matter jurisdiction over the claims in this case under the federal question and supplemental jurisdiction doctrines.

### B.    The Interests of Justice Weigh in Favor of Transfer.

Having found that this action could have been brought in the Middle District of Florida, the Court must next determine whether the interests of justice weigh in favor of transfer. *Yelverton v. Lab. Corp. of Am. Holdings*, CIVIL ACTION NO. 19-6045-KSM, 2020 WL 2307353, at *3 (E.D. Pa. May 8, 2020) ("[H]aving made the threshold determination under § 1404(a) that venue is proper in both forums, the Court now considers the *Jumara* private and public interest factors to determine whether transfer to the District of Delaware under § 1404(a) is appropriate in this case.").  The Third Circuit has enumerated a non-exhaustive list of private and public factors that courts should consider when determining whether transfer is in the interests of justice. *Jumara*, 55 F.3d at 879–80.  Defendant argues that before considering those factors, however, the Court must first determine whether Plaintiff has shown a "change in circumstances" since the initiation of the lawsuit.  (Doc. No. 21 at 8.)

### 1.    <u>Changed Circumstances</u>

There is some basis for Defendant's argument that Plaintiff must demonstrate a change of circumstances before seeking transfer.  *See, e.g.*, *Great W. Min. & Mineral Co. v. ADR Options, Inc.*, 882 F. Supp. 2d 749, 755–56 (D.N.J. 2012) ("As a threshold matter, 'a plaintiff seeking to transfer the venue of an action pursuant to § 1404 typically must demonstrate a change in circumstance that has occurred since the filing of the action which warrants a change of venue.'" (quoting *Rappaport v. Steven Spielberg, Inc.*, 16 F. Supp. 2d 481, 501 (D.N.J. 1998)); *James v. Daley & Lewis*, 406 F. Supp. 645, 648–49 (D. Del. Jan. 7, 1976) ("However, before a court will grant a plaintiff's motion for a change of venue, he must first show a change in circumstances

since the filing of his suit.  None of plaintiffs' reasons for transfer have arisen since the inception

of this suit." (citations omitted)); *Harry Rich Corp. v. Curtiss-Wright Corp.*, 308 F. Supp. 1114,

1118 (S.D.N.Y. 1969) ("When a plaintiff is a movant under Section 1404(a) he must show a

change in circumstances since the filing of suit.").

More recent cases, however, have refused to view changed circumstances as a

prerequisite to transfer.  Instead, those cases consider the existence of changed circumstances as

one additional factor when balancing the relevant private and public interests.  *See, e.g.*, *Fuller v.

Insys Therapeutics, Inc.*, Civil Action No. 2:17-cv-07877-ES-SCM, 2018 WL 4275992, at *3

(D.N.J. Sept. 6, 2018) ("[T]he Court rejects Insys' argument that the Fullers must show

change[d] circumstances prior to seeking transfer under Section 1404.  Insys relies on older case

law which ostensibly suggests that a plaintiff must show changed circumstances in order to

succeed on a Section 1404 motion to transfer venue.  In contrast, more recent case law in this

District, particularly after the Third Circuit's decision in *Jumara* have held that changed

circumstances are not a prerequisite to transfer.  Rather, courts *may* consider a change in

circumstance *or lack thereof*, as an additional factor, alongside the traditional convenience and

interests of justice factors when a plaintiff seeks to transfer venue."); *cf. Roberts Bros., Inc. v.

Kurtz Bros.*, 231 F. Supp. 163, 167–68 (D.N.J. July 7, 1963) (considering lack of changed

circumstances along with convenience of parties and witnesses).

More frequently, courts have required plaintiffs to *either* demonstrate a change in

circumstances *or* show that transfer is "in the interest of justice."  *See, e.g.*, *Fed. Trade Comm'n

v. Endo Pharms., Inc.*, Civ. No. 16-1440, 2016 WL 6124376, at *7 (E.D. Pa. Oct. 20, 2016)

("[A]s Plaintiff, the FTC must make out 'changed circumstances which have arisen since the

time when the suit was institute or . . . some basis in the interest of justice for transfer.'" (quoting

*Valido-Shade v. Wyeth LLC*, Civil Action No. 12-20003, 2014 WL 4794967, at *2 (E.D. Pa. Sept. 26, 2014))); *Reese v. Global Tel\*link Corp.*, CIVIL ACTION No. 15-2197, 2016 WL 3059438, at *5 n.9 (E.D. Pa. May 31, 2016) ("Although the Third Circuit has not had occasion to consider the issue, district courts in this Circuit have suggested a plaintiff's motion for change of venue should be granted only when there are changed circumstances which have arisen since the time when the suit was instituted *or when there is some basis in the interest of justice for transfer upon balancing the various § 1404(a) factors*." (alterations adopted)); *Valido-Shade*, 2014 WL 4794967, at *2 ("Our Court of Appeals has not had occasion to speak about the proper analysis where a plaintiff, as opposed to a defendant, has filed a motion to transfer.  Courts facing this issue have generally concluded that a plaintiff's motion for change of venue should be granted only when there are changed circumstances which have arisen since the time when the suit was instituted or when there is some basis in the interest of justice for transfer upon balancing the various § 1404(a) factors."); *cf. Farifax Dental (Ireland) Ltd. v. S.J. Filhol Ltd.*, 645 F. Supp. 89, 92 (E.D.N.Y. Sept. 19, 1986) ("Plaintiff must show that a change in circumstances since the suit was filed warrants a transfer of venue.  The plaintiff's burden may be met by showing that transfer would satisfy the interests of convenience and justice."); *Gipromer v. SS Tempo*, 487 F. Supp. 631, 632–33 (S.D.N.Y. 1980) ("Early cases in this district held that absent a showing of change of circumstances after the filing of the complaint, we should deny a plaintiff's motion to transfer 'in the interest of justice,' at least under s. 1404(a). . . .  Nevertheless, in the recent case of *Corke v. Sameiet M.S. Song*, our Court of Appeals reversed a dismissal based on lack of personal jurisdiction and ordered transfer where the plaintiff had simply chosen the wrong forum.  The court did not cite any change of circumstances but instead balanced the relative hardships entailed in granting or denying transfer.  We think that application of the *Corke*

9

analysis compels us to conclude that transfer would serve the interest of justice.").

The correct standard is of little consequence in this case, however, because even if the Court required evidence of changed circumstances, that burden is slight and Plaintiff satisfies it here by showing that he only recently learned through discovery that DMS—the third party vendor that allegedly made the telephone call at issue—is located in the Middle District of Florida. *See Reese*, 2016 WL 3059438, at *5 n.9 ("[I]nsofar as a change in circumstances is necessary, the proceedings before the MDL Panel—in which the Panel resolved GTL's request that the interstate and intrastate ICS actions be coordinated in a single forum by suggesting voluntary coordination was the appropriate mechanism for this result—supply the requisite change." (cleaned up)); *Anglo Am. Ins. Gp., P.L.C. v. CalFed Inc.*, 916 F. Supp. 1324, 1330 (S.D.N.Y. Feb. 26, 1996) ("In this case, the court finds that the settlement negotiations and the agreement are a sufficient change in circumstance to warrant the court's consideration of a § 1404(a) motion by third-party plaintiff CalFed."); *cf. Fuller*, 2018 WL 42755992, at *4 (assuming without deciding that removal of the case to federal court "constitutes a change in circumstance which supports transfer, in the sense that it was a litigation event 'beyond their control,'" but finding the factor "only weighs slightly in favor of transfer").

Defendant argues that this explanation is insufficient because "Plaintiff has always known, based on the original call, that [Defendant] did not make the call at issue." (Doc. No. 21 at 8.) But just because Plaintiff knew a third party placed the call, does not mean Plaintiff knew who that third party was or where the third party was located such that it could affect Plaintiff's initial decision to file in this district. Defendant also argues that Plaintiff cannot demonstrate changed circumstances because he has "known at least since October 3, 2022 that DMS was involved in the calls to Plaintiff, yet he waited until over two months after that to bring" the

motion to transfer.  (*Id.*)  But this delay has virtually no effect on the Court's analysis, which considers whether something has changed *since the lawsuit's initiation* that would alter the plaintiff's initial venue choice.  *See Great W. Min. & Mineral Co.*, 882 F. Supp. 2d at 755–56 ("As a threshold matter, 'a plaintiff seeking to transfer the venue of an action pursuant to § 1404 typically must demonstrate a change in circumstance that has occurred *since the filing of the action* which warrants a change of venue.'" (quoting *Rappaport*, 16 F. Supp. 2d at 501) (emphasis added)); *James*, 406 F. Supp. at 648–49 ("However, before a court will grant a plaintiff's motion for a change of venue, he must first show a change in circumstances *since the filing of his suit*.  None of plaintiffs' reasons for transfer have arisen *since the inception of this suit*." (citations omitted) (emphases added)); *Reese*, 2016 WL 3059438, at *5 n.9 ("[D]istrict courts in this Circuit have suggested a plaintiff's motion for change of venue should be granted only when there are changed circumstances *which have arisen since the time when the suit was instituted* or when there is some basis in the interest of justice for transfer upon balancing the various § 1404(a) factors." (emphasis added)); *see also Farifax Dental (Ireland) Ltd.*, 645 F. Supp. at 92 ("Plaintiff must show that a change in circumstances *since the suit was filed* warrants a transfer of venue." (emphasis added)).

Because Plaintiff did not know DMS's identity or whereabouts when he initially filed this action in the Eastern District of Pennsylvania, he has sufficiently demonstrated a change in circumstances since the lawsuit's initiation.  Regardless of whether the Court views this as a prerequisite or one factor in the analysis, it weighs in favor of transfer.

### 2.     <u>Private Interest Factors</u>

Next, the Court turns to the private interest factors.  Those factors include: (1) "plaintiff's forum preference as manifested in the original choice"; (2) "the defendant's preference"; (3) "whether the claim arose elsewhere"; (4) "the convenience of the parties as

indicated by their relative physical and financial condition"; (5) "the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora"; and (6) "the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Jumara*, 55 F.3d at 879.

Because Plaintiff, not Defendant, is moving to transfer, the first factor is neutral. *See Stewart v. First Student, Inc.*, __ F. Supp. 3d __, 2022 WL 16731231, at *3 (E.D. Pa. Nov. 7, 2022) ("*Jumara* makes plain that this factor considers 'plaintiff's forum preference as manifested in the *original* choice. Plaintiff's forum preference is given significant deference where the defendant—not the plaintiff—moves to transfer. Where the plaintiffs move to transfer, as here, this factor is neutral."). Under the second factor, Defendant's forum preference is this District and thus, weighs against transfer. The third factor—where the claim arose—weighs in favor of transfer because the TCPA and FTSA claims arose in the Middle District of Florida, where Plaintiff and DSM reside and where Plaintiff received the phone call at issue. *Cf. Fitzhenry v. Guardian Protection Servs., Inc.*, 2016 WL 6652760, at *1 (W.D. Pa. Nov. 9, 2016) ("District courts find proper venue where the alleged injury occurred which, in a TCPA action, is where the telephone call was received."). Nevertheless, because Plaintiff brings claims on behalf of a putative nationwide class and alleges that Defendant operated from this District when it oversaw DSM and the other vendors that allegedly violated the TCPA, this factor weighs only marginally in favor of transfer.

The fourth factor also weighs in favor of transfer because Plaintiff resides in the Middle District of Florida, and although Defendant maintains its principal place of business in this District, it is a national company and can more easily afford the cost of litigating away from home. *Jumara*, 55 F. 3d at 87 (explaining that this factor considers the "relative physical and

financial condition" of the parties).  Finally, the fifth and sixth factors are neutral.  Neither party

has argued that witnesses would be unavailable for trial in either district, and as both parties

concede, the files at issue in this case can be "easily reproduced and provided in electronic

format."[3]  *Stewart*, 2022 WL 16731231, at *4; *see also Nagle v. Cox*, 2019 WL 1227214, at *3

(M.D. Pa. Mar. 15, 2019) ("[W]hile the investigation of the accident took place in the Eastern

District, it is unclear whether any law enforcement or other potential witnesses would be

unavailable for trial here.  So this factor is also neutral.  Finally, the location of books and

records is a relevant consideration only to the extent that they could not be produced in the

alternative forum, and Defendants acknowledge that there is no indication that the availability of

such records is forum-dependent.").

In sum, the first, fifth, and sixth factors are neutral.  The second factor weighs against

transfer, and the third and fourth factors weigh slightly in favor of transfer.  On balance, the court

finds the private interest factors weigh marginally in favor of transfer.

### 3.   Public Interest Factors

The Third Circuit has also identified six public interests for courts to consider: (1) "the

enforceability of the judgment"; (2) "practical considerations that could make the trial easy,

expeditious, or inexpensive"; (3) "the relative administrative difficulty in the two fora resulting

from court congestion"; (4) "the local interest in deciding local controversies at home"; (5) "the

public policies of the fora"; and (6) "the familiarity of the trial judge with the applicable state

law in diversity cases."  *Jumara*, 55 F.3d at 879–80.

---

[3] Plaintiff argues that this factor nevertheless "heavily favors Plaintiff here because DMS has critical records of calls it or a subvendor made to Plaintiff and the putative class"; Plaintiff may "need to move to compel" production of those documents; and Plaintiff would need to file such a motion in the Middle District of Florida anyway."  (Doc. No. 19 at 8–9.)  As the Court explains in more detail in its discussion of judicial economy, Plaintiff's assertions that it *may* need to file an enforcement action are not persuasive.

Here, the first and fifth factors are neutral.  Any judgment issued in this case will be equally enforceable in either district.  *Bensalem Lodging Assocs., LLC v. Holiday Hospitality Franchising, LLC*, 575 F. Supp. 3d 532, 541 (E.D. Pa. Dec. 10, 2021) ("Neither party makes an argument as to the enforceability of the judgment. Regardless, this factor is neutral because a judgment in either this Court or in the Northern District of Georgia is equally enforceable.").  As for the fifth factor, neither party has explained how the public policy considerations differ between this District and the Middle District of Florida.  *Id.* ("Neither party makes any argument related to the public policies of the fora. As such, this factor is deemed neutral.").

The second public factor is also neutral.  This factor focuses on issues of judicial economy and considers whether transfer would limit the "'wastefulness of time, energy and money' that results from 'two cases involving precisely the same issues simultaneously pending in different District Courts.'"  *Stewart*, 2022 WL 16731231, at *4 (quoting *Cont'l Grain Co. v. FBL-585*, 364 U.S. 19, 26 (1960)).  Plaintiff argues this factor weighs in favor of transfer because he "*may* need to file an action" in the Middle District of Florida to "enforce his subpoena to DMS, and also *may* decide to add DMS and/or third parties as defendants."  (Doc. No. 19 at 11 (emphases added).  Because Plaintiff has not filed an action against DMS or shown with any certainty that he intends to do so, the Court does not find that the second factor weighs in favor of transfer.  Given the early stage of the litigation and the Court's limited involvement in this case to date, this factor weighs neither in favor nor against transfer.

The third factor—the relative administrative difficulties—weighs slightly in favor of transfer to the Middle District of Florida.  *See Stewart*, 2022 WL 16731231, at *5 (explaining that this factor "queries whether there is an 'appreciable difference in docket congestion between the two districts,' and favors the forum with a less congested docket and faster median time from

filing to disposition or trial" (quoting *Jumara*, 55 F.3d at 883)).  The most recent Federal Judicial

Caseload Statistics publication reports 8,253 cases pending in the Eastern District of

Pennsylvania, and 6,547 pending in the Middle District of Florida in March 2022.  In addition,

the median time intervals from filing to disposition is virtually the same for the two districts with

the Eastern District of Pennsylvania taking approximately 6.7 months, and the Middle District of

Florida taking approximately 6.5 months per civil case.  Although this District has a higher

number of pending cases and takes longer to dispose of those cases, the difference between the

two districts is marginal, so this factor weighs only slightly in favor of transfer.

The fourth factor also weighs slightly in favor of transfer.  Plaintiff agrees that this factor

is neutral to the extent he brings putative class claims under federal law.  (Doc. No. 19 at 10.)

*See Stewart*, 2022 WL 16731231, at *6 (explaining that this factor is "regularly rendered neutral

in class actions . . . because the nature of the class action does not make this a local

controversy"); *Cigna Corp. v. Celgene Corp.*, CIVIL ACTION NO. 21-90-KSM, 2021 WL

2072210, at *4 (E.D. Pa. May 24, 2021) ("As the claims allege nationwide violations of federal

law there are no distinct public interests in resolving the claims in Pennsylvania, no clear

difference in policy preferences for the two locales, and no disparities in the qualifications of the

federal judges sitting in the two districts to pass on federal law.").  However, here, Plaintiff also

brings claims under the FTSA.  Florida has an interest in this case to the extent Plaintiff alleges

that Defendant, using a Florida-based business (DSM), violated Floridians' rights under a Florida

statute.  *See Dariz v. Republic Airline, Inc.*, 377 F. Supp. 3d 499, 505 (E.D. Pa. 2019) ("The only

public factor that slightly favors transferring is the Southern District of Indiana's local interest in

adjudicating this action since the central facts of the case occurred there and several witnesses

are located there."); *see also Turizo v. Subway Franchisee Ad. Fund Tr. Ltd.*, __ F. Supp. 3d __,

2022 WL 2919260, at *9 (S.D. Fla. May 18, 2022) ("[I]t hardly seems disputed that the FTSA's autodialer provision advances a legitimate public interest:  protecting Floridians from annoying and harassing robocalls that may harm financial interests by tying up businesses' phone lines and wasting individuals' time and productivity.").

Likewise, although judges in each district are equally familiar with the federal cause of action, judges in the Middle District of Florida are more familiar with the law governing the FTSA claims, which are not entirely coextensive with the TSPA claims.  Therefore, the sixth factor also weighs slightly in favor of transfer.  *See Bensalem Lodging Assocs., LLC*, 573 F. Supp. 3d at 541 ("Though Plaintiff did not invoke diversity jurisdiction in its complaint, this factor is nonetheless relevant because Georgia law, as the applicable law selected by the parties, will apply to the contract claims in this case. As such, this final factor weighs in favor of venue in Georgia."); *cf. Stewart*, 2022 WL 16731231, at *4 ("The sixth factor—the trial judge's familiarity with the applicable state law—is not applicable here because this case concerns federal, not state, law.")

In sum, the first, second, and fifth public interest factors are neutral, and the third, fourth, and sixth factors weigh slightly in favor of transfer.  Accordingly, on balance, these factors weigh in favor of transfer.

## III.    CONCLUSION

In sum, after balancing the public and private interests at issue in this case, the Court finds transfer appropriate regardless of whether it also considers the change in circumstances since the case was initiated.  Plaintiff's motion is granted and this case is transferred to the Middle District of Florida.  An appropriate order follows.