IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| DOUGLAS SIMPSON, on behalf of himself and others similarly situated, | : CIVIL ACTION NO. 8:23-cv-152-KMM-AEP |
| Plaintiff, | : |
| v. | : |
| THE J.G. WENTWORTH COMPANY and DIGITAL MEDIA SOLUTIONS, LLC, | : |
| Defendants. | : |

**PLAINTIFF'S OPPOSITION TO DEFENDANT DIGITAL MEDIA SOLUTIONS, LLC'S MOTION TO DISMISS**

Digital Media Solutions, LLC's ("DMS") motion should be denied on all bases.

*First*, the motion ignores the precedent from the Eleventh Circuit released just last month in *Drazen v. Pinto*, 74 F.4th 1336, 2023 U.S. App. LEXIS 18832 (11th Cir. 2023). Plaintiff Mr. Douglas Simpson has sufficiently pled an injury in fact arising from DMS's violation of the Telephone Consumer Protection Act's robocalls provision, 47 U.S.C. § 227(b)(1)(A)(iii) ("TCPA") and the Florida Telephone Solicitations Act, Fla. Sta § 501.059 ("FTSA") by alleging that Defendant's unwanted call to his cellular telephone number that resulted in a pre-recorded message being played harmed him because (1) it was an annoyance, nuisance, and

invasion of privacy, (2) it occupied his phone line, and (3) it disturbed the use and enjoyment of his phone. (Doc. 37 at ¶ 41.) Last month, the Eleventh Circuit unequivocally held that such a circumstance warrants Article III standing:

> The question at the core of this appeal is whether the plaintiffs who received a single unwanted, illegal telemarketing text message suffered a concrete injury. To answer that question, we consider whether the harm from receiving such a text message shares a close relationship with a traditional harm. The plaintiffs contend that it does—namely, with the harm that underlies a lawsuit for the common-law claim of intrusion upon seclusion. We agree.
>
> Both harms reflect an intrusion into the peace and quiet in a realm that is private and personal. A plaintiff who receives an unwanted, illegal text message suffers a concrete injury.

*Drazen*, 2023 U.S. App. LEXIS 18832, at *3-4. The single call at issue in this lawsuit similarly qualifies. Indeed, the co-defendant acknowledged that such an argument should wait until discovery was conducted. (*See* Doc. 80.) The finding that DMS asks this Court to make requires the Court to go outside the four corners of the complaint and to ignore the holding from the Eleventh Circuit in *Drazen*.

*Second*, because the calls played a pre-recorded message, the type of dialer system utilized is irrelevant to Count II, which is brought under Fla. Stat. § 501.059(8)(a), as the statute prohibits one to "make or knowingly

allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers **or** the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a) (emphasis added).

As such, the motion should be denied.

## BACKGROUND AND PLAINTIFF'S ALLEGATIONS

As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020). This case involves a campaign by The J.G. Wentworth Company ("J.G. Wentworth") to market its services through the use of pre-recorded telemarketing calls in violation of the TCPA. J.G. Wentworth commissioned telemarketing vendors, including DMS, to place pre-recorded telemarketing

calls to Mr. Simpson and other putative class members without their prior express written consent. Mr. Simpson also alleges that DMS and its telemarketers use automated systems to make telemarketing calls into Florida as well as to Florida residents that have placed themselves on the National Do Not Call Registry, and that by doing so, J.G. Wentworth has violated the provisions of the FTSA.

Mr. Simpson's cellular telephone number is (727) 470-XXXX. (*See* Doc. 37 at ¶ 25.) That cellular telephone number is a residential telephone line used by Mr. Simpson for personal calls. (*Id.* at ¶ 26.) That telephone number had been on the National Do Not Call Registry for at least a year prior to January 22, 2020. (*Id.* at ¶ 28.)

Despite that, Mr. Simpson received a pre-recorded telemarketing call from DMS on behalf of J.G. Wentworth on July 13, 2022. (*Id.* at ¶ 29.) The call played a pre-recorded message. (*Id.* at ¶ 30.) The pre-recorded message did not identify the caller. (*Id.* at ¶ 31.) The pre-recorded message inquired about the call recipient's financial condition, including inquiring if the call recipient had debt and wanted to borrow money. (*Id.* at ¶ 32.) The call was clearly pre-recorded because (a) there was a significant pause after Plaintiff picked up the phone before the robot started speaking; (b) the recording would keep playing when the call recipient began talking; and (c) the robot

had a generic monotone voice. (*Id.* at ¶ 33.) Plaintiff then spoke to "Nick from JG Wentworth." (*Id.* at ¶ 34.)

## PLAINTIFF'S DECLARATION

In addition to his allegations in the Amended Complaint, which are sufficient in their own right, Mr. Simpson has submitted a declaration (attached hereto as Exhibit 1) further confirming that his phone number 727-470-XXXX is on the National Do Not Call Registry, that he did nothing to precipitate or welcome the pre-recorded message to his phone number, that the call annoyed him, violated his privacy, and deprived him of legitimate use of his phone, and that he feigned interest in the telemarketing script on the call in order to ascertain the identity of the caller. (*Id.* at ¶¶ 2-10, 14-18.) Mr. Simpson's declaration also confirms it was necessary for him to do so, as on the initial part of the call, omitted by J.G. Wentworth in the exhibits attached to its Motion to Dismiss (Doc. 52), he interacted with an avatar called "Robert," which Mr. Simpson correctly suspected was a fictitious person designed to disguise the entity legally responsible for the call. (Ex. 1 at ¶¶ 7-9, 11-13.) It was not until Mr. Simpson engaged with the caller and filed this lawsuit that J.G. Wentworth alleged that it was DMS that made the call.

5

# ARGUMENT

## A. Plaintiff Has Sufficiently Alleged Article III Harm for the Unwanted Pre-Recorded Telemarketing Call He Received.

Mr. Simpson has alleged that the pre-recorded call he received was unwanted, a nuisance, occupied his phone line, and was an invasion of privacy. (Doc. 37 at ¶ 41.) Nothing more is required under Eleventh Circuit law to allege a plaintiff's standing based on having received a TCPA violative pre-recorded call, as the Eleventh Circuit recently held in *Drazen*, 2023 U.S. App. LEXIS 18832:

> The question at the core of this appeal is whether the plaintiffs who received a single unwanted, illegal telemarketing text message suffered a concrete injury. To answer that question, we consider whether the harm from receiving such a text message shares a close relationship with a traditional harm. The plaintiffs contend that it does—namely, with the harm that underlies a lawsuit for the common-law claim of intrusion upon seclusion. We agree.
>
> Both harms reflect an intrusion into the peace and quiet in a realm that is private and personal. A plaintiff who receives an unwanted, illegal text message suffers a concrete injury.

*Id.* at *3-4. In fact, every court of appeals to address the question has found that the TCPA elevated harms to legally cognizable injuries such that Article III standing is established if plaintiffs allege a statutory violation of a procedure designed to protect against the harm the statute was designed to

prevent. *See, e.g., Golan v. FreeEats.com, Inc.*, 930 F.3d 950, 959 (8th Cir. 2019) ("An alleged harm need not actually have been actionable at common law to satisfy this inquiry, rather it must have a 'close relationship' to the type of harm that has traditionally been recognized as actionable."); *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037 (9th Cir. 2017) ("A plaintiff alleging a violation under the TCPA 'need not allege any additional harm beyond the one Congress has identified.'"); *Susinno v. Work Out World Inc.*, 862 F.3d 346 (3d Cir. 2017) (holding receipt of a single missed call resulting in a pre-recorded voicemail to be sufficiently concrete injury, noting similarity to intrusion upon seclusion tort); *Carl v. First Nat'l Bank*, No. 2:19-cv-00504-GZS, 2021 U.S. Dist. LEXIS 111889, at *16 (D. Me. June 15, 2021) (citing *Gadelhak v. AT&T Servs., Inc.,* 950 F.3d 458, 462-63 (7th Cir. 2020) (Barrett, J.)). This is because, as the *Susinno* court explained, "Congress was not inventing a new theory of injury when it enacted the TCPA" but instead "elevated a harm that, while 'previously inadequate in law,' was of the same character of previously existing 'legally cognizable injuries.'" 862 F.3d at 352 (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)).

The Eleventh Circuit acknowledged this when it relied on Justice Barrett when explaining:

7

> To find the sweet spot between similar yet not identical, now-Justice Barrett has said that we should ask whether the harms share "a 'close relationship' in kind, not degree." *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 462 (7th Cir. 2020) (Barrett, J.) (quoting *Spokeo*, 578 U.S. at 341), *cited with approval in TransUnion*, 141 S. Ct. at 2204... Instead, they have held that receiving either one or two unwanted texts or phone calls resembles the *kind* of harm associated with intrusion upon seclusion. *See Gadelhak*, 950 F.3d at 463 & n.2(one unwanted text message); *Melito*, 923 F.3d at 93 (same); *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1042-43 (9th Cir. 2017) (two unwanted text messages); *Susinno v. Work Out World Inc.*, 862 F.3d 346, 351-52 (3d Cir. 2017) (one unwanted phone call); *Ward*, 63 F.4th at 581(same); *Lupia*, 8 F.4th at 1192 (same); *Krakauer*, 925 F.3d at 652-653 (two unwanted phone calls in one year). In fact, even we have held that receiving "more than one unwanted telemarketing call" causes a harm that bears "a close relationship to the kind of harm" that intrusion upon seclusion inflicts. *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1270 (11th Cir. 2019).

*Drazen,* 2023 U.S. App. LEXIS 18832, at *14-15. In other words, an allegation of a violation of the TCPA in a complaint itself is sufficient as a concrete injury, just as the Eleventh Circuit held that Congress identified:

> [T]he Constitution empowers Congress to decide what degree of harm is enough so long as that harm is similar in kind to a traditional harm. And that's exactly what Congress did in the TCPA when it provided a cause of action to redress the harm that unwanted telemarketing texts and phone calls cause. *See* 47 U.S.C. § 227(b)(1)(A)(iii). As our colleagues in the Third Circuit have recognized,

8

> "Congress was not inventing a new theory of injury when it enacted the TCPA." *Susinno*, 862 F.3d at 352. Rather, "Congress identified a modern relative of a harm with long common law roots." *Gadelhak*, 950 F.3d at 462.
>
> In sum, then, we hold that the harm associated with an unwanted text message shares a close relationship with the harm underlying the tort of intrusion upon seclusion. Both harms represent "an intrusion into peace and quiet in a realm that is private and personal." *Id.* at 462 n.1. For that reason, the harms are similar in kind, and the receipt of an unwanted text message causes a concrete injury.

*Id.* at *17-18. And to be clear, there is no difference between a single text message or a single pre-recorded call, as the Supreme Court has held with respect to the TCPA. *See Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of §227(b)(1)(A)(iii).").

DMS *concedes* that Plaintiff's complaint alleges that the calls were unwanted and invasive of his privacy. (Doc. 83 at p. 6.) Instead, it asks this Court to go beyond the four corners of the complaint and determine that it had consent to make the calls at issue. As set forth in Mr. Simpson's Declaration, he definitively disputes DMS's purported consent evidence (Ex. 1 at ¶¶ 19-21), and discovery will be needed on the source of that evidence and the circumstances of its creation.

9

Furthermore, DMS asks this Court to go outside of the pleadings and find that because Mr. Simpson stayed on the call, he must have wanted to receive the call. However, this ignores Mr. Simpson's declaration that makes clear that it was necessary for him to do so, as on the initial part of the call, omitted by J.G. Wentworth in the exhibits attached to its Motion to Dismiss (Doc. 52), he interacted with an avatar called "Robert," which Mr. Simpson correctly suspected was a fictitious person designed to disguise the entity legally responsible for the call. (Ex. 1 at ¶¶ 7-9, 11-13.) It was not until Mr. Simpson engaged with the caller and filed this lawsuit that J.G. Wentworth alleged that it was DMS that made the call. As another court has held in a TCPA case:

> Implicit in Defendant's statutory standing argument is the notion that expertise in plaintiff-side TCPA litigation is necessarily bad—bad enough to rob a plaintiff of his *future* ability to bring cases. "Nothing in the Constitution, though, requires a plaintiff to be a naïf. Litigation is not college athletics: there is no 'amateurs only' rule." *Cunningham v. Rapid Response Monitoring Servs., Inc.*, 251 F. Supp. 3d 1187, 1195 (M.D. Tenn. 2017). The Court declines to give Victory Phones a "free pass" simply because they robo-dialed a caller aware of his rights under the TCPA.

*Perrong v. Victory Phones LLC*, No. 20-5317, 2021 U.S. Dist. LEXIS 132404, at *10-11 (E.D. Pa. July 15, 2021).[1] The TCPA and the statutory damages it offers plaintiffs are "specifically designed to appeal to plaintiff's self-interest and to direct that self-interest toward the public good" with statutory damages operating as rewards, or "bounties," for catching telemarketers engaged in illegal practices to them. *Cunningham v. Rapid Response Monitoring Servs.*, 251 F. Supp. 3d 1187, 1195 (M.D. Tenn. 2017). *See also Charvat v. Echostar Satellite, LLC*, 630 F.3d 459, 461 (6th Cir. 2010) ("Phillip Charvat has not been shy in taking on the role of a private attorney general under the [TCPA]."); *Universal Underwriters Ins. Co. v. Lou Fusz Auto. Network, Inc.*, 401 F.3d 876, 881 (8th Cir. 2005) (private right of action under TCPA demonstrates Congressional intent to incentivize aggrieved parties to act as "private attorneys general"); *Mey v. Venture Data, LLC*, 245 F. Supp. 3d 771, 783 (N.D.W. Va. 2017) (denying a motion for summary judgment in a TCPA case holding, "It is true that the plaintiff has brought a number of TCPA cases. It is further true that she has telephone answering and recording equipment[, but] [t]his does not deprive the plaintiff of standing any more than the purchase of a burglar alarm would indicate that the homeowner wanted her house to be broken

---

[1] The *Perrong* case involved a plaintiff who had filed hundreds of TCPA lawsuits, something that no one alleges Mr. Simpson has done here.

into….While [defendant] is understandably frustrated by Ms. Mey's efficacy, she is doing exactly what Congress intended—enforcing the law.").

Defendant's reliance on the Supreme Court's decision in *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021), is misplaced, as stated by the Eleventh Circuit in *Drazen*. *TransUnion* involved claims under the Fair Credit Reporting Act ("FCRA") for a class who asserted that they had inaccurate information placed in their credit files in violation of the FCRA. *TransUnion* states only certain statutory claims that have common law analogues present a sufficiently concrete injury-in-fact sufficient to support Article III standing. The Supreme Court, however, *drew a distinction between the FCRA and the TCPA*, citing a TCPA decision authored by then Seventh Circuit Judge Barrett, recognizing "intrusion upon seclusion" as a harm "traditionally recognized as providing a basis for [a] lawsuit[] in American courts." *TransUnion LLC*, 141 S. Ct. at 2204 (citing TCPA case *Gadelhak*, 950 F.3d at 462), *cert denied*, 209 L. Ed. 2d 568, 2021 WL 1521010 (U.S. 2021)). *Gadelhak* makes it clear that it is the nature of the violation of the TCPA that gives rise to Article III standing *because* it had a common law analogue. *See Gadelhak*, 950 F.3d at 461-63.

Accordingly, Mr. Simpson has suffered an injury analogous to one cognizable at common law and otherwise sufficient to establish standing to

12

pursue his TCPA claim arising from receiving an unwanted pre-recorded telemarketing call from Defendants, as mandated by the Eleventh Circuit.

**B.     Plaintiff Is Seeking a Claim Based Upon the Pre-Recorded Message Component of DMS's Telemarketing, but Plaintiff Has Also Stated a Claim Under the Same Count for Automated Calling.**

Count II of Plaintiff's claim is brought under Fla. Stat. § 501.059(8)(a), as the statute prohibits one to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers **or** the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a) (emphasis added). Here, the "automated system" that Plaintiff references is the "playing of a recorded message when a connection is completed." *Id.* Plaintiff has pled that clearly, including that the "pre-recorded message inquired about the call recipient's financial condition, including inquiring if the call recipient had debt and wanted to borrow money." (Doc. 37 at ¶ 32.) Plaintiff further pled that the "call was clearly pre-recorded because (a) there was a significant pause after the Plaintiff picked up the phone before the robot started speaking (b) the recording would keep play when the call recipient began talking (c) the robot had a

13

generic monotone voice." (*Id.* at ¶ 33.) As such, Plaintiff has stated a claim under the statute.

However, Plaintiff had also stated a claim for the utilization of an "automated system" by his allegation that a recorded message was used and that there was a significant pause after Plaintiff picked up the phone before the robot started speaking. Similar allegations to those made have been found sufficient to give rise to a reasonable inference that an automated telephone dialing system was used in TCPA cases, which undisputedly has a more exacting standard than a FTSA case. *See, e.g., Neptune v. Whetstone Partners, LLC*, 34 F. Supp. 3d 1247, 1250 (S.D. Fla. 2014) (finding sufficient allegations that calls were autodialed or messages were pre-recorded where *inter alia* defendant called plaintiff on numerous occasions several times per day, with generic content messages such as a pre-recorded voice reminding plaintiff that his payment was due); *Quinn v. Branch Banking & Tr. Co.*, No. 5:19-cv-433-Oc-30PRL, 2019 U.S. Dist. LEXIS 224786, at *2 (M.D. Fla. Dec. 20, 2019) ("Indeed, well-pled allegations of an [automated telephone dialing system] rely on indirect allegations, such as the content of the message, the context in which it was received, and the existence of similar messages to raise an inference that an [automated telephone dialing system] was used."); *Zeidel v. Nat'l Gas &*

14

*Elec., Ltd. Liab. Co.,* No. 18 CV 06792, 2019 U.S. Dist. LEXIS 83988 (N.D. Ill. May 17, 2019) (generic promotional messages or hearing a pause before being connected to an operator are "facts supporting a reasonable inference that the defendant used an ATDS ...."); *Maes v. Charter Commc'n.*, 345 F. Supp. 3d 1064, 1070 (W.D. Wis. 2018) (ATDS adequately pled when complaint stated that plaintiff heard dead air after answering, because predictive dialers can be autodialers).

Absent discovery, it is typically impossible for a plaintiff to know the technological capacities of the dialing system used to place the call, and courts do not require Mr. Simpson to plead facts he has no way of knowing. *See Whitehead v. Ocwen Loan Servicing, LLC*, No. 2:18-cv-470-FtM-99MRM, 2018 U.S. Dist. LEXIS 182386, at *11 (M.D. Fla. Oct. 24, 2018) ("There is no way for [the plaintiff] to know the technological capabilities of the device(s) used to place the calls at issue ... short of [the plaintiff] learning that information in discovery."); *Shelton v. Nat'l Gas & Elec., LLC*, No. 17-4063, 2019 U.S. Dist. LEXIS 59235, at *32-34 (E.D. Pa. Apr. 5, 2019) ("[W]e cannot require a plaintiff to make allegations regarding the technical aspects of a device, including the precise level of human intervention needed to place a call, when he or she has no way of knowing those details prior to discovery.");*Wilson v. Quest Diagnostics Inc.*, No.

2:18-11960, 2018 U.S. Dist. LEXIS 212023, at *8-11 (D.N.J. Dec. 10, 2018) ("During discovery, the parties can explore the actual configuration of the dialing equipment used to call Plaintiff, as such evidence could shed light on whether Quest used a device capable of making autodialed calls.").

DATED this 7th day of September, 2023.

           Respectfully submitted,

           **/s/ Brian K. Murphy**
           Brian K. Murphy, Lead Counsel
           (admitted *pro hac vice*) (Ohio Bar No. 0070654)
           Joseph F. Murray (admitted *pro hac vice*) (Ohio Bar No. 0063373)
           Geoffrey J. Moul (92496)
           Jonathan P. Misny (admitted *pro hac vice*) (Ohio Bar No. 0090673)
           Murray Murphy Moul + Basil LLP
           1114 Dublin Road
           Columbus, OH  43215
           Telephone: 614.488.0400
           Facsimile: 614.488.0401
           E-mail: murphy@mmmb.com
                    murray@mmmb.com
                    moul@mmmb.com
                    misny@mmmb.com

>Anthony Paronich (admitted *pro hac vice*)
>Paronich Law, P.C.
>350 Lincoln St, Suite 2400
>Hingham, MA 02043
>Phone: 617.485.0018
>Fax: 508.318.8100
>E-mail: anthony@paronichlaw.com
>
>*Counsel for Plaintiff and the Putative Class*

## CERTIFICATE OF SERVICE

I hereby certify that on September 7, 2023, I electronically filed the foregoing using the CM/ECF system, which will automatically provide notice to all counsel of record by electronic means.

>**/s/ Brian K. Murphy**
>Brian K. Murphy