UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DOUGLAS SIMPSON,
on behalf of himself and all others similarly situated,

    Plaintiff,

v.                                                        Case No: 8:23-cv-00152-KKM-AEP

THE J.G. WENTWORTH COMPANY,
and DIGITAL MEDIA SOLUTIONS, LLC,

    Defendants.
_____

## ORDER

Douglas Simpson sues The J.G. Wentworth Company and Digital Media Solutions, LLC, for alleged violations of the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227, and the Florida Telephone Solicitation Act (FTSA), § 501.059, Fla. Stat. In short, Simpson claims that the Defendants' actions resulted in an unwanted telemarketing call being placed to his cellphone. Although J.G. Wentworth initially moved to dismiss based on Article III standing, (Doc. 52), it withdrew that motion in the light of the Eleventh Circuit's en banc decision in *Drazen v. Pinto*, 74 F.4th 1336, 1346 (11th Cir. 2023) (en banc) (explaining "that the receipt of an unwanted text message causes a concrete injury" for Article III standing purposes); *see also* (Docs. 82, 85). Digital

Media Solutions then filed its own motion to dismiss, arguing that Simpson lacked standing and that Count II alleging a violation of the FTSA failed to state a claim under Federal Rule of Civil Procedure 12(b)(6). MTD (Doc. 83).

Because the amended complaint alleges an unwanted phone call and Digital Media Solutions's evidence is inconclusive at best, I decline to dismiss the amended complaint for lack of standing at this time. I also conclude that Simpson has stated a plausible "automated system" claim under the FTSA and thus deny the motion to dismiss Count II.

## I.   BACKGROUND

Since at least January 22, 2020, Douglas Simpson's cellphone number has been registered on the National Do Not Call Registry. Am. Compl. (Doc. 37) ¶ 28. Nevertheless, Simpson received a telemarketing call from Digital Media Solutions on behalf of J.G. Wentworth on July 13, 2022. *Id.* ¶ 29. The call opened with a pre-recorded message that did not identify the caller. *Id.* ¶¶ 29–33. Simpson stayed on the line and eventually spoke with someone who identified himself as being "from J.G. Wentworth" and provided contact information confirming that fact. *Id.* ¶¶ 34–36. Simpson then sued in the United States District Court for the Eastern District of Pennsylvania claiming that J.G. Wentworth had violated the TCPA by placing the call. *See* Compl. (Doc. 1).

Simpson eventually moved to transfer the case to this Court, which was granted in early 2023. *See* (Docs. 19–23). Upon receiving the case, I struck the complaint as an

impermissible shotgun pleading and granted leave to amend. (Doc. 28). Simpson's amended complaint added Digital Media Solutions as a defendant after J.G. Wentworth identified them as having made the call. Am. Compl. ¶ 40. J.G. Wentworth then moved to dismiss the amended complaint on standing grounds, and I stayed the case pending the Eleventh Circuit's en banc reconsideration of the TCPA standing issue in *Drazen*. (Docs. 52, 68, 77). After *Drazen* was decided, J.G. Wentworth withdrew its motion pending additional discovery. (Docs. 80–82). After J.G. Wentworth withdrew its motion to dismiss Digital Media Solutions filed its own, raising a similar standing challenge and arguing that Count II failed to state a claim under Florida law. MTD at 4–12.

## II.   LEGAL STANDARDS

### A. Rule 12(b)(1)

Article III of the Constitution limits federal courts to deciding 'Cases' and 'Controversies.' *Drazen*, 74 F.4th at 1342 (quoting U.S. CONST. art III, § 2). "That 'limitation is founded in concern about the proper—and properly limited—role of the courts in a democratic society.'" *Id.* (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 492–93 (2009)). "[S]tanding is one of several doctrines that reflect this fundamental limitation." *Id.* (quoting *Summers*, 555 U.S. at 493). Article III standing has three elements: injury in fact, traceability, and redressability. *See id.* Digital Media Solutions's motion implicates only the first, which requires Simpson to show that he suffered an injury

3

in fact "that is concrete, particularized, and actual or imminent." *Id.* (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2022)).

A defendant may raise standing objections at the pleading stage by moving to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1). *See* FED. R. CIV. P. 12(b)(1). There are two kinds of Rule 12(b)(1) attacks. Facial attacks "challenge[] whether a plaintiff 'has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion.'" *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1230 (11th Cir. 2021) (quotations omitted). In contrast, factual attacks "challenge[] the existence of subject matter jurisdiction irrespective of the pleadings, and extrinsic evidence may be considered." *Id.* "A district court evaluating a factual attack on subject matter jurisdiction . . . 'is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" *Id.* (quotations omitted).

### B. Rule 12(b)(6)

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action

4

will not do.' " *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Id.* (quoting *Twombly*, 550 U.S. at 557).

To survive a motion to dismiss for failure to state a claim, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on its face when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When considering the motion, the Court accepts the complaint's factual allegations as true and construes them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Courts should limit their "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004).

### III.   ANALYSIS

Digital Media Solutions argues that I should dismiss Simpson's complaint for lack of Article III standing, or at least dismiss Count II for failure to state a claim under the FTSA. Addressing each issue in turn, I conclude that both arguments fail.

#### A. At this Juncture, Simpson Sufficiently Alleges Article III Standing

Because subject-matter jurisdiction is a threshold issue, I begin with Digital Media Solutions's factual attack on jurisdiction. The standing challenge turns on a key word in *Drazen*'s holding: "the receipt of an *unwanted* text message causes a concrete injury." 74 F.4th at 1346 (emphasis added). Digital Media Solutions argues that Simpson lacks standing because "[t]he call was not unwanted." MTD at 6. Specifically, it contends that Simpson "voluntarily provided his phone number and asked to receive the subject call," rendering it "specifically and expressly requested" rather than unwanted. *Id.* at 6–7.

Digital Media Solutions advances two theories of how the Simpson might have invited the call. First, its points to Senior Compliance Manager Kat Giardina's affidavit, which identifies two instances in which Digital Media Solutions obtained a "a lead associated with [Simpson's] name and telephone number." Giardina Aff. (Doc. 83-1) at 2. The affidavit claims that these leads originate from Simpson's interactions with two websites, Snappysurveys.com and speedysurveyclub.com, in January 2022. *Id.* at 2–3. The affidavit contains excerpts from both websites' terms of service, each of which includes an

6

acknowledgment that the user is "consenting to and requesting that" the "Consumer Council" (a fictious entity standing-in for Digital Media Solutions) contact them using a provided email address and phone number. *Id.* Second, it argues that Simpson was immediately given the option to end the initial call by "press[ing] 1" but instead chose to continue engaging for roughly 15 minutes. MTD at 8–9 (citing Call #1 Tr. (Doc. 52-1) at 2:5–6). Simpson responds with an affidavit stating that he has never visited either website and that the IP addresses associated with Digital Media Solutions's leads are not associated with him. Simpson Aff. (Doc. 87-1) at 3–4. On this sparse record, both of Digital Medial Solutions's arguments fail.

Taking the latter point first, whether Simpson could have immediately ended the call is irrelevant to the standing analysis under controlling precedent. *See Drazen*, 74 F.4th at 1346 ("[W]e hold that the receipt of an unwanted text message causes a concrete injury."). Just as it does for a text message, the simple receipt of an unwanted phone call causes a concrete injury. *Cf. id.* Digital Media Solutions's arguments about the length of the call and the nature of Simpson's discussion are really about the degree of harm that Simpson may have suffered on account of the call. But as the en banc Eleventh Circuit explained in *Drazen*, "the Constitution empowers Congress to decide what degree of harm is enough so long as that harm is similar in kind to a traditional harm. And that's exactly

7

what Congress did in the TCPA when it provided a cause of action to redress the harm that unwanted telemarketing texts and phone calls cause." *Id.* at 1345.

Digital Media Solutions's other argument, that Giardina's affidavit and the call transcripts prove that Simpson invited the communication, fares no better. To be sure, there may be some set of circumstances where a transcript and a defendant's internal records can conclusively establish that a call was not unwanted and thus defeat standing at the pleading stage. But the transcripts here are, at worst, consistent with Simpson's version of events, related under penalty of perjury in his affidavit, that he stayed on the line and continued engaging with the Defendants' representatives to figure out who was calling (and thus who to sue). *See* Simpson Aff. at 1–2; Call #1 Tr.; Call #2 Tr. (Doc. 52-2); Call #3 Tr. (Doc. 52-3). Simpson has also denied that he visited the websites Digital Media Solutions relies on for its evidence of consent. Simpson Aff. at 3–4.

When it withdrew its jurisdictional challenge after *Drazen*, J.G. Wentworth acknowledged that further development of the record was necessary to determine whether Simpson had Article III standing based on an unwanted phone call. *See* (Doc. 82) at 2–3. I agree. Dismissal on standing grounds is inappropriate at this time. If later discovery uncovers that the call was indeed invited, Defendants may revisit the injury-in-fact issue.

B. **Count II States a Claim Under the FTSA**

In the alternative, Digital Media Solutions argues that I should at least dismiss Count II for failure to state a claim. Section 501.059(8)(a) of the FTSA provides that "[a] person may not make or knowingly allow to be made an unsolicited telephonic sales call if such call involves an automated system for the selection and dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." § 501.059(8)(a), Fla. Stat. The amended complaint recites this statutory language and then alleges that Defendants "failed to secure prior express written consent from [Simpson]" and "made and/or knowingly allowed the telephonic sales calls to [Simpson] to be made utilizing an automated system for the selection or dialing of telephone numbers." Am. Compl. ¶¶ 85–91.

Digital Media Solutions argues that Count II does nothing more than "parrot the statutory language" through a "mechanical recitation of the elements of the cause of action." MTD at 10 (quotations omitted). It faults Simpson for "stat[ing] no facts in support of his conclusory assertion that Defendants used an 'automated system for the selection or dialing of telephone numbers'" and highlights the lack of "specific details related to Defendants, any 'system' (automated or not) that was allegedly used, or the alleged procedures for making telephone calls." *Id.* at 11. Simpson replies that Count II states a claim under a

9

different clause of § 501.059(8)(a), which prohibits unwanted calls that involve "the playing of a recorded message when a connection is completed" and that, in any event, he need not plead specific facts about Defendants' alleged automated calling system to survive a motion to dismiss under Rule 12(b)(6). Resp. to MTD (Doc. 87) at 13–16. I agree with Simpson, but only in part.

Count II's factual allegations are clear, Defendants "made and/or knowingly allowed the telephonic sales calls to [Simpson] to be made utilizing an automated system for the selection or dialing of telephone numbers." Am. Compl. ¶ 83. Although Count II repeats the entire statutory phrase, it is clear from context that it is intended to be an "automated system" claim and not a "recorded message" claim. For example, Count II does not include the words "recorded message" outside the direct quote from § 501.059(8)(a). Simpson's class allegations also refer to the Count II class as the "Florida Telephone Solicitation Act Autodial Class" and define it as all U.S. persons who "(1) received a telephonic sales call regarding J.G. Wentworth's goods and/or services, (2) using the same equipment or type of equipment utilized to call [Simpson] (3) since July 1, 2021." *Id.* ¶ 58. Simpson does not move for leave to amend, and he cannot edit the complaint via a response to a motion to dismiss. *See Rosenberg v. Gould*, 554 F.3d 962, 967 (11th Cir. 2009) ("Where a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly.").

10

That said, even if limited to an "automated system" theory, Count II still states a claim. Digital Media Solutions argues that courts in this district have dismissed similarly worded complaints for lack of adequate factual support. *See* MTD at 11–12 (citing *Davis v. Coast Dental Servs., LLC*, No. 8:22-cv-941, 2022 WL 4217141 (M.D. Fla. Sept. 13, 2022)). But the court in *Davis* specifically noted that the plaintiff there could have "pleaded facts such as information on [a defendant's] website indicating that messages are sent through automated systems, information regarding the formality of the message, or information regarding the phone number from which the message was received that could indicate an automated source." 2022 WL 4217141, at *2. In contrast, Simpson alleges that "[t]he call was clearly pre-recorded because (a) there was a significant pause after [Simpson] picked up the phone before the robot started speaking (b) the recording would keep play[ing] when the call recipient began talking (c) the robot had a generic monotone voice." Am. Compl. ¶ 33; *see also id.* ¶¶ 29–36. Accepting as true that the call began with a pre-recorded message and only later directed Simpson to one Defendants' representatives and construing that allegation in the light most favorable to Simpson, I am able to make the common-sense inference that the call was placed using an automated system and not because Defendants "hir[ed] a marketing firm to send individual messages from a personal cell phone in full compliance with the FTSA." *Davis*, 2022 WL 4217141, at *2; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief

11

will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."). But Simpson has not alleged sufficient facts to support Count II through a "recorded message" claim.

IV. CONCLUSION

Accordingly, Digital Media Solutions's Motion to Dismiss (Doc. 83) is **DENIED**. Digital Media Solutions must answer the Amended Complaint (Doc. 37) by **February 6, 2024**. The Parties must also confer and file an updated **Case Management Report** by **February 6, 2024**.

**ORDERED** in Tampa, Florida, on January 23, 2024.

Kathryn Kimball Mizelle
United States District Judge